IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MARK R. KIESEL LIVING TRUST and MONTANA WOODS LLC, | CV 22-109-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| THOMAS HYDE, | |
| Defendant. | |

This matter comes before the Court on Defendant Thomas Hyde's motion for an award of attorney's fees. (Doc. 114). Also before the Court is Hyde's motion for leave to supplement his motion for attorney's fees. (Doc. 125). Plaintiffs Mark R. Kiesel Living Trust and Montana Woods LLC (collectively "Kiesel") oppose the motions and object to Hyde's bill of costs. For the reasons set forth below, the Court grants Hyde's motion for attorney's fees, denies Hyde's motion to supplement, and overrules Kiesel's objection to the bill of costs.

## I.    Background

In November 1999, Hyde purchased an undeveloped property near Hamilton, Montana. (Doc. 89 at ¶ 1). The parcel is located within the Stock Farm development, a gated residential community, and is commonly known as NKN

1

Stock Farm Road, Lot 31, Hamilton, Montana ("Lot 31)". (Doc. 56 at ¶ 1-2). Lot 31 is subject to covenants restricting development within the Stock Farm subdivision. (Doc. 84 at ¶2; Doc. 61-2). Crucially, the applicable covenants prohibit the construction of any building on Lot 31 outside of a designated "building envelope." (Doc. 89 at ¶ 96; Doc. 61-2 at 24, 25).

In June 2021, Hyde agreed to sell Lot 31 to Kiesel. The parties thereafter entered in a Buy-Sell Agreement. (Doc. 89 at ¶ 39; Doc. 56-12). After the sale closed, Kiesel discovered that gas, sewer, and electrical lines ran through a portion of Lot 31's designated building envelope. (Doc. 84 at ¶¶ 49-50; Doc. 89 at ¶¶ 10, 66). According to Kiesel, the location of the utility lines diminished the value of Lot 31 and made it impossible to develop. (Doc. 27 at ¶ 23; Doc. 55 at 16).

Kiesel filed a complaint in this matter in June 2022, and an amended complaint in February 2023. (Docs. 1, 27). Kiesel's amended complaint alleged seven claims for relief: (1) negligence, (2) rescission, (3) negligent misrepresentation, (4) fraud, (5) constructive fraud, (6) punitive damages, and (7) breach of contract/attorney fees. (Doc. 27 at ¶¶ 30-89). Following discovery, Hyde moved for summary judgment on all seven claims and Kiesel filed a motion for partial summary judgment on his rescission claim, or alternatively, his claims for actual or constructive fraud. (Docs. 59, 54).

On August 30, 2024, this Court entered an order granting Hyde's motion for

summary judgment, denying Kisel's motion for summary judgment, and denying as moot all remaining motions in the case. (Doc. 112 at 47). Hyde thereafter filed a motion for attorney's fees (Doc. 114) and application for taxation of costs (Doc. 117). With leave of this Court, Hyde filed a supplemental bill of costs on September 24, 2024. (Doc. 122). Hyde filed his motion for leave to supplement his motion for attorney's fees on September 27, 2024. (Doc. 125). Kiesel opposes the motion for attorney's fees and motion to supplement, and objects to Hyde's bill of costs. (Docs. 126, 129). On September 27, 2024, Kiesel filed a notice of appeal of the Court's order on summary judgment. (Doc. 123).

## II.     Discussion

### a.     Fees

This case is before the Court under diversity jurisdiction. 28 U.S.C. § 1332. In diversity cases, federal courts apply state substantive law and federal procedural rules. *Hanna v. Plummer,* 380 U.S. 460, 464-65 (1965). The availability and calculation of fees is a substantive issue and in diversity cases is therefore governed in this case by state law. "In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007) (citing *In re Larry's Apartment, L.L.C.,* 249 F.3d 832, 837–38 (9th Cir.2001)).

3

### 1.    Whether to defer adjudication

In response to Hyde's motion for attorney's fees and application for taxation of costs, Kiesel argues the Court should defer adjudication until after the pending appeal in this matter is resolved. (Doc. 126 at 3). For authority, Kiesel cites to the Advisory Committee Notes to Fed. R. Civ. P. 54, which indicate that in the event of an appeal on the merits "the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice . . . ." Fed. R. Civ. P. 54(d), Advisory Committee Note, 1993 Amendment. Kiesel further cites (Doc. 126 at 3-4) to several decisions in which a district court deferred ruling on fees pending decisions by the Ninth Circuit Court of Appeals. *Mohave Cnty. v. Lexon Surety Grp. LLC,* No. CV-14-08011-PCT-DJH, 2016 WL 11786996, at *1 (D. Ariz. Sept. 29, 2016); *Sunday's Child, LLC v. Irongate Azrep BW LLC,* No. CV 13-00502 DKW-RLP, 2018 WL 6628938, at *2 (D. Haw. Oct. 4, 2018); *Katzkin Leather, Inc. v. Roadwire, LLC,* No. CV202093DSFRAOX, 2022 WL 17101244, at *1 (C.D. Cal. June 28, 2022); *Newman v. Underhill*, No. 5:23-CV-00033-SP, 2024 WL 1647218, at *1 (C.D. Cal. Mar. 29, 2024).

Kiesel's primary argument in support of deferring adjudication appears to be that a favorable ruling from the Ninth Circuit would moot or at least minimize Hyde's entitlement to costs and fees. In support, Kiesel cites to a decision from the Central District of California, *Newman v. Underhill,* for the proposition that the

strength of a party's arguments on appeal may influence a court's decision on whether to defer adjudication on a pending motion for fees. 2024 WL at *1. Kiesel contends he has presented "colorable" issues on appeal such that "circumstances caution against determining whether to award fees or impose costs, before such appeal is resolved." (Doc. 126 at 4-5).

In reply, Hyde argues that Kiesel fails to address the proper test for determining whether the court should issue a stay pending a decision on appeal. (Doc. 130 at 2). Hyde cites to *Lynwood Investments CY Limited v. Konovalov* from the Northern District of California. No. 20-CV-03778-MMC, 2022 WL 17840270, at *7 (N.D. Cal. Dec. 20, 2022). There, the court addressed a similar request for attorney's fees amidst a pending appeal before the Ninth Circuit. In deciding not to stay a ruling on the motion for fees, the court applied four factors from *Hilton v. Braunskill.* 481 U.S. 770, 776 (1987). The *Hilton* factors are (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits;" (2) "whether the applicant will be irreparably injured absent a stay;" (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding;" and (4) "where the public interest lies." *Lynwood,* 2022 WL at *7 (quoting *Hilton*, 481 U.S. at 776).

The parties advance two different standards for deciding whether to defer ruling on the issues at hand, but the outcome is the same under either approach.

Applying either standard, Kiesel's arguments fail. The primary basis for Kiesel's argument comes from the text and notes of Rule 54. As the Advisory Committee Notes make clear, the choice between deferring or ruling on a motion pending appeal is left to the discretion of the court. Exercising that discretion, this Court finds it appropriate to rule on the pending motions. While Kiesel contends that judicial economy would be best served by waiting, the same could be said for any patently non-frivolous appeal.

Kiesel's argument regarding the strength of his case on appeal is similarly unavailing. Although Kiesel argues he has "several colorable arguments that will be advanced upon appeal" which he believes will result in a reversal of the Court's order, he simply reiterates the Court's findings and suggests that the Ninth Circuit will likely reverse. As with his argument on judicial economy, Kiesel's conclusion that any non-frivolous appeal mandates a stay of an attorney fee motion is not supported by the law or the facts of this case. Unlike civil rights cases, this case does not involve a statutory award of fees which is tied to the degree of success obtained and requires the Court to analyze whether a nominal result should give rise to a large attorney fee award. The fees in this case result from a contractual provision that awards the fees to the prevailing party, which is Hyde. The Court does not need to engage in an analysis of the degree of success because it was complete. Ultimately, as in any case, the appellate court may reverse, but that

6

possibility does not justify staying the attorney fee award analysis.

The standard advanced by Hyde is even less favorable to Kiesel's position. The first *Hilton* factor asks whether the proponent of a stay pending appeal has made a strong showing that they are likely to succeed on the merits. 481 U.S. at 776. As above, Kiesel has failed to demonstrate a strong showing of success on the merits. Therefore, this factor weighs against a stay.

The second *Hilton* factor asks whether the applicant will be irreparably injured without the stay. The third *Hilton* factor similarly asks whether a stay would substantially injure the other parties interested in the proceeding. 481 U.S. at 776. Regarding the second factor, Hyde argues that, in the event this Court orders an award of fees and the Ninth Circuit subsequently reverses the Court's decision on summary judgment, any harm to Kiesel would be unwound when the award of fees is likewise reversed. (Doc. 130 at 3). Regarding the third factor, Hyde argues "[s]ince an award would begin to accrue judgment interest during Kiesel's appeal, the third factor favors a stay." (Doc. 130 at 3). Hyde further argues "delaying an award of fees would prevent Hyde from levying on Kiesel's assets unless he obtains a stay of execution by posting an appropriate bond." (Doc. 130 at 3). Without addressing the substance of these claims, the thrust of Hyde's arguments could apply to either party. Therefore, the second and third factors do not tilt strongly in favor of either Kiesel or Hyde.

The fourth *Hilton* factor asks where the public interest lies. 481 U.S. at 776. As Hyde argues, judicial economy and the public interest would best be served by resolving the present issues sooner rather than later, while the facts and procedural history of the case are easily recalled by the Court and the parties.

Taken together, the first and fourth *Hilton* factors weigh decidedly against a stay. The second and third factors are indeterminate. Therefore, the standard advanced by Hyde weighs against deferring or staying the resolution of this issue. Accordingly, this Court will not defer its decision.

### 2.    Whether awarding fees would be just

Montana follows the "American Rule," under which prevailing parties must generally bear their own fees. However, statutes and contractual provisions provide common exceptions, and may entitle the prevailing party to fees. *Gendron v. Montana U. System,* 461 P.3d 115, 119 (Mont. 2020) (citations omitted). Here, Hyde's claim for fees rests on a fee-shifting provision in the Buy-Sell Agreement for Lot 31: "In any action brought by the Buyer or the Seller to enforce any of the terms of this agreement, the prevailing party in such action shall be entitled to such reasonable attorney fees as the court or arbitrator shall determine just." (Doc. 61-8 at 7).

While Kiesel does not dispute that Hyde was the prevailing party, he does argue that an award of fees to Hyde would be unjust and would therefore violate

the Buy-Sell Agreement. (Doc. 126 at 6). In support, Kiesel offers two primary arguments. First, Kiesel argues that granting fees to Hyde would be unjust because Kiesel purchased Lot 31 without knowing that sewer, gas, and electric lines all ran through the lot. Therefore, Kiesel asserts, imposing fees would "unnecessarily add insult to injury to a litigant that has undisputably been harmed . . . ." (Doc. 126 at 7). Second, Kiesel argues that the case was brought in good faith and was premised on non-frivolous arguments. (Doc. 126 at 7).

In response, Hyde argues that Kiesel misrepresents the fee-shifting language in the Buy-Sell Agreement. Under Hyde's interpretation of the fee provision, the court's discretion regarding what is "just" should concern the amount of fees, rather than the availability of fees. (Doc. 130 at 4-5). Regarding Kiesel's "insult-to-injury" argument, Hyde proffers that (1) the issue of the utility lines was not the result of wrongdoing by Hyde, (2) Hyde himself is the victim of abusive litigation, and (3) Kiesel has, throughout this case, insisted on his own right to recover fees. Hyde further argues that Kiesel's argument that the case was brought in good faith is not supported by caselaw and is generally irrelevant given the fee-shifting provision in the Buy-Sell Agreement.

Considering these arguments, the Court finds that awarding fees to Hyde would not be "unjust." First, the language of the Buy-Sell Agreement unequivocally awards attorney fees to the prevailing party in any action brought to

enforce any terms of the agreement. (Doc. 61-8 at 7). While the attorney provision does state the prevailing party "shall be entitled to such reasonable attorney fees as the court or arbitrator shall determine just," this cannot reasonably be read to allow conditioning of entitlement to fees to be whether the Court agrees that enforcement of the provision would be just. Additionally, Kiesel's "adding insult to injury" theory appears to argue that because he was the non-prevailing party, it would be unjust to award fees because he already lost. However, that begs the entire purpose of an attorney fee provision in a contract: the parties both bear the risk of being required to pay fees if there is a lawsuit or arbitration, which theoretically is taken into account when deciding whether to instigate litigation. Kiesel's argument that the litigation was brought in good faith and thus should not warrant an attorney fee award suffers from the same logical flaw: if the "good intention" of the non-prevailing party was sufficient to void an otherwise enforceable attorney fee provision, the provision itself would be meaningless.

### 3.    Reasonable fees

The availability and method for calculating fees are governed by state law. *Mangold v. California Pub. Utilities Commn.*, 67 F.3d 1470, 1478 (9th Cir. 1995). Montana law accords "significant deference" to the trial court's determination of attorney's fees. *Tafelski v. Johnson*, 552 P.3d 40, 47 (Mont. 2024). However, any award must nevertheless be reasonable. *Tafelski,* 552 P.3d at 47. "The

reasonableness of fees depends on the facts of each case." *Gendron*, 461 P.3d at 119. In *Plath v. Schonrock*, the Montana Supreme Court laid out seven non-exclusive factors to guide the determination of reasonableness. 64 P.3d 984, 991 (Mont. 2003) (citations omitted). These factors are addressed in greater detail below.

In briefing these issues, the parties fail to uniformly invoke Montana's framework for fee determinations in cases such as this one. Instead, their arguments reference a combination of state and federal law. Hyde's brief in support of his motion for fees makes no reference to the *Plath* factors but does apply a lodestar calculation, which is consonant with the appropriate calculation method under Montana law. (Doc. 115 at 5). In response, Kiesel claims that Hyde seeks an unreasonable amount of fees and advances three arguments to that effect.

First, Kiesel argues that Hyde has a "colorable basis" only for fees incurred in litigating Kiesel's breach of contract claim. (Doc. 126 at 8). Therefore, Kiesel argues, Hyde cannot claim fees for fees incurred in litigating the other issues in this case. Second, Kiesel argues that Hyde impermissibly seeks "fees incurred in preparing and filing" the motion for attorney's fees. (Doc. 126 at 10). Finally, Kisel argues that Hyde seeks fees for hours that are excessive, redundant, or unnecessary. (Doc. 126 at 11).

### A.    Whether fees are available for all claims

As above, the availability of attorney's fees in this matter is premised on the fee-shifting provision in the Buy-Sell Agreement. The provision states "[i]n any action brought by the Buyer or the Seller to enforce any of the terms of this Agreement, the prevailing party in such action shall be entitled to such reasonable attorney fees as the court or arbitrator shall determine just." (Doc. 61-8 at 7).

Kiesel argues the fee-shifting language only applies to claims related to the terms of the Buy-Sell Agreement, and thus Hyde's only possible claim is to fees incurred defending the breach of contract claim. Kiesel insists that the only claim in this case that could be construed as having been brought to enforce any of the terms of [the Buy-Sell Agreement] is his claim for breach of contract. In support, Kiesel cites to *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* a Ninth Circuit decision that does not apply Montana law. 122 F.3d 1211 (9th Cir. 1997). Kiesel also references *Merchant Transaction Systems, Inc. v. Nelcela, Inc.,* which involved questions of Arizona law. No. CV02-1954-PHX-MHM, 2010 WL 1336956 (D. Ariz. Mar. 31, 2010).

In response, Hyde argues it is impossible to segregate the fees related to the breach of contract claim from those related to Kiesel's other claims. (Doc. 130 at 7). Hyde references several Montana cases that address this issue, including *Emmerson v. Walker* and *Blue Ridge Homes, Inc. v. Thein*.  236 P.3d 598 (Mont.

2010); 191 P.3d 374 (Mont. 2008).

Under Montana law, attorney's fees must generally flow from a statutory or contractual provision. Accordingly, fees are only available for time spent working on claims or theories for which fees are provided. This holds true in cases where some claims support an award of fees and others do not. "[W]here a lawsuit involves multiple claims or theories, an award of attorney fees must be based on the time spent by the prevailing party's attorney on the claim or theory under which attorney fees are allowable." *Blue Ridge Homes*, 191 P.3d at 388. There is, however, an exception to this general rule. A party may be entitled to fees for all claims if it is impossible to segregate between time spent on those claims where fees are available and those where fees are unavailable. In *Blue Ridge Homes*, the Montana Supreme Court affirmed the trial court's determination that the work on various claims was inseparable because the "evidence showed that these claims involved identical facts and theories." 191 P.3d at 388-89.

Here, most of the time spent on issues for which fees are available cannot be segregated from time spent on other issues. Kiesel does not dispute that the Buy-Sell Agreement creates a colorable claim for fees related to Kiesel's claim for breach of contract. In Count VII of the amended complaint, Kiesel indicates "Mr. Hyde materially breached the Buy-Sell Agreement by failing to disclose information regarding the existence and location of the Utilities." (Doc. 27 at ¶ 87).

13

As Hyde points out, the other six counts in the Amended Complaint are similarly premised on allegations that Hyde failed to disclose or withheld information regarding the presence of the utility lines on Lot 31. (Doc. 27 at ¶¶ 36, 46, 47, 53, 64, 66, 78, 83, 87; Doc. 130 at 8).

With one negligible exception, the ultimate resolution of all issues considered on summary judgment turned on facts and theories identical to those supporting Kiesel's claim for breach of contract. For instance, Hyde's threshold argument that Kiesel was on constructive notice applied equally to breach of contract as to Kiesel's other claims. (Doc. 112 at 12). Similarly, the Court found that Hyde was entitled to summary judgment on Kiesel's claim that Hyde breached the implied covenant of good faith and fair dealing because Hyde did not have knowledge of the location of the utilities when he sold Lot 31 to Kiesel. (Doc. 112 at 32-33). Hyde's same lack of knowledge was dispositive in the Court's determinations regarding Kiesel's claims for negligence, negligent misrepresentation, constructive fraud, actual fraud, and recission based on actual or constructive fraud.[1] (Doc. 112 at 19, 29, 32-33, 36, 38).

---

[1] Only Kiesel's claim for recission based on mutual mistake was resolved on other grounds. (Doc. 112 at 46). However, the distinction between the resolution of this issue and the others in this case was not raised by Kiesel in briefing on fees. Nor is the distinction significant enough to segregate time spent on this issue from the rest of the claims in this matter. Further, in briefing on summary judgment, Kiesel argued at length that, under Montana law, fees related to recission should be available to the prevailing party based on the fee-shifting provision of the Buy-Sell

Given the intertwined nature of the claims in this matter and the identical facts underlying them, the Court finds it impossible to segregate most of the fees claimed by Hyde. Accordingly, Kiesel's argument that Hyde should have submitted an accounting which allocated fees to time spent on the breach of contract fails.

However, the Court has identified one easily segregated issue for which fees are not available. Six billing entries from January 30-31, 2023 concern potential third-party claims. (Doc. 116-1 at 19). The entries indicate these claims would have been brought against Justin Alexander, the architect retained by Kiesel to design a residence on Lot 31. (Doc. 84 at ¶ 33). The possibility of a third-party claim against Alexander is unrelated to the contractual obligations between Kiesel and Hyde.[2] Therefore, these fees can and must be segregated from those that are available to Hyde under the fee-shifting provision of the Buy-Sell Agreement. The entries in question account for a cumulative 7.75 hours of time incurred by four different attorneys. Together, these hours equal $1,795.00 in fees that are not encompassed by the fee-shifting provision.

In total, Hyde requests $283,251.75 in fees. After subtracting the $1,795.00

---

Agreement. (Doc. 55 at 29).

[2] Other time entries also reference Justin Alexander. However, Alexander was a key witness in the case. Accordingly, fees related to Alexander in that capacity are properly subject to the fee-shifting provision.

in fees related to potential third-party claims, the Court finds that $281,456.75 in fees are available to Hyde under the terms of the fee-shifting provision of the Buy-Sell Agreement. However, the analysis does not end there.

## B.    Whether fees-for-fees are available

Kiesel next challenges Hyde's request for fees on the grounds that some of the entries listed in the invoices from Mr. Hyde's counsel relate to time spent on Hyde's motion for attorney's fees. Kiesel argues "'[f]ees for fees' are generally not recoverable under Montana law . . . ." (Doc. 126 at 10). In support, Kiesel references the Montana Supreme Court's decision in *Swapinski v. Lincoln County*. 357 P.3d 329, 333 (Mont. 2015). However, that case is readily distinguished from the facts at hand. There, the availability of fees was based on the court's equitable authority. *Swapinksi*, 357 P.3d at 333. Here, the availability of fees flows from an explicit contractual provision. The Montana Supreme Court has regularly distinguished cases in which fees are based on statutory or contractual provisions from those in which fees are based in equity.

Kiesel also argues that "the contractual language in this case upon which [Hyde] premises his fee request does not expressly permit a 'fees-for-fees' award." (Doc. 126 at 11). This is assertion is contradicted by the weight of Montana Supreme Court precedent.

The Montana Supreme Court's holding in *Chase v. Bearpaw Ranch*

*Association* is directly applicable to the facts at hand. There, the court held that because contractual provisions create an exception to the American rule, it follows that "[t]he terms of the contract necessarily dictate the scope of the exception . . . ." 133 P.3d 190, 199 (Mont. 2006). Accordingly, "fee-shifting occurs only to the extent that the contracting parties clearly intended." *Chase*, 133 P.3d at 199. Considering the contractual language at issue, the court held that fees-for-fees were available for the prevailing party, but only to the extent that the fees supported efforts to establish entitlement for fees. Fees were not available for litigation to establish the amount of attorney's fees.

The contractual provision at issue in *Chase* is similar to the fee-shifting provision here in the Buy-Sell Agreement. The fee-shifting provision in *Chase* provided that:

> [i]n any action of any kind for the enforcement of the Covenants, Conditions, and Restrictions, if the relief prayed for is granted in whole or in part, the applicant for relief shall be entitled to recover necessary court Costs [sic] for the action, including reasonably attorney's fees.

133 P.3d at 197. Considering this language, the Montana Supreme Court's decision rested on the phrase "for the enforcement of . . . ." According to the court, the parties' entitlement to fees was established in the fee-shifting provision. An action to establish that entitlement was "properly construed as an action for . . . enforcement" and was therefore subject to fee-shifting. 133 P.3d at 199.

Here, the Buy-Sell Agreement provides "[i]n any action brought by the Buyer or the Seller to enforce any of the terms of this Agreement, the prevailing party in such action shall be entitled to such reasonable attorney fees as the court or arbitrator shall determine just." (Doc. 61-8 at 7). As in *Chase*, the Buy-Sell Agreement allows fees for *enforcement* of the provision of the agreement. Because the fee-shifting provision is part of the agreement, a successful action to determine whether a party is owed attorney's fees entitles the prevailing party to fees. However, as in *Chase*, there is no language in the Buy-Sell Agreement that provides for fees incurred in determining the *amount* of fees.

The distinction between fees incurred in enforcing a fee-shifting provision and fees incurred in determining the proper amount of fees had greater effect in *Chase* than it does in the matter at hand. In *Chase*, the parties incurred fees during hearings specifically dedicated to determining the amount of fees owed. These fees-for-fees could apparently be segregated cleanly from those fees-for-fees incurred in solely establishing a party's entitlement to fees. 133 P.3d at 199.

Here, there is no such distinction. In his motion for attorney's fees, Hyde asks for fees "presently in the amount of $283,251.75, plus any additional amount incurred in proving the amount [*sic*] his attorney's fees . . . ." (Doc. 114 at 1). Hyde's brief in support of the motion contradicts this request to some degree. There, Hyde merely requests "this Court to grant its [*sic*] Motion for Award of

Attorney's Fees in the amount of $283,251.75." (Doc. 115 at 8). The $283,251.75 amount apparently represents the total amount that Hyde was billed for all services at the time the motion for attorney's fees was filed.

Reviewing the invoices attached to the brief as Exhibit 1, it appears that Hyde was billed for time spent preparing the instant motion and associated briefing. (Doc. 116-1 at 118-120). While the briefing on this issue necessary includes some argument over the reasonable amount of fees, it is difficult to image how Hyde could have filed a motion for attorney's fees without addressing what amount was owed. Unlike the procedural history in *Chase*, there have been no proceedings where the amount of fees was the primary issue addressed. Further, to the extent that some of the fees-for-fees incurred in this matter relate to determining the amount of fees owed, those fees-for-fees cannot be segregated from the fees-for-fees related to establishing Hyde's entitlement to fees.

Therefore, all of Hyde's fees-for-fees should be considered together, and Kiesel's argument that fees-for-fees are not available to Hyde is unavailing. To the extent that Hyde's motion also requests additional amounts "incurred in proving the amount [*sic*] his attorney's fees," those amounts are not available to Hyde under *Chase*.

## C.    Calculating reasonable fees

The Court must next apply Montana law to determine if the award requested

by Hyde is reasonable. "If attorney fees are recoverable by statute or contract, an award of fees must be reasonable." *Ferdig Oil Co., Inc. v. ROC Gathering, LLP,* 432 P.3d 118, 124 (Mont. 2018) (citing *Houden v. Todd,* 324 P.3d 1157. 1164 (Mont. 2014)). Whether an award of fees is reasonable is "determined by the facts of each case." *NorVal Electric Coop. Inc. v. Lawson*, 523 P.3d 5, 21 (Mont. 2022) (citing *Plath*, 64 P.3d 984). The Montana Supreme Court recognizes two primary methods for calculating fees: "the lodestar method, which involves multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work, and the percentage of the recovery method, which authorizes fees to be paid from a percentage of a common fund or a contingency fee agreement." *Gendron,* 461 P.3d at 119 (internal quotations and citations omitted).

When determining reasonable fees under the lodestar method, courts in Montana apply seven non-exclusive factors to guide the determination of reasonableness:

> (1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorney's character and standing in their profession; and (7) the results secure by the services of the attorneys.

*Plath,* 64 P.3d at 991. "There is a 'strong presumption that the lodestar figure

20

represents a reasonable fee.'" *NorVal*, 523 P.3d at 21 (quoting *Ihler v. Chisholm*, 995 P.2d 439, 454 (Mont. 2000)).

Although Hyde did not address the *Plath* factors in briefing, he did calculate his attorney's fees using the lodestar method. The facts of this case do not involve a common fund or a contingency fee agreement. Therefore, the lodestar method is appropriate for calculating fees in this matter. Based on the available evidence and considering the *Plath* factors, the Court finds the amount requested by Hyde ($283,251.75) minus the fees related to third party claims ($1,795.00) constitutes a reasonable sum; $281,456.75. The Court will address each of the *Plath* factors in turn.

First, "the amount and character of the services rendered" to Mr. Hyde reflect the contentious, long-standing nature of this dispute. *Plath,* 64 P.3d at 991. This case was filed in June of 2022, and involved significant discovery and multiple motions in limine. The parties' briefing on summary judgment touched on several different bodies of law. The hundreds of hours[3] for which Hyde seeks fees are therefore reasonable, given the significant effort expended by his counsel.

---

[3] Hyde's brief in support of his motion for attorney's fees sets out the number of hours expended by different attorneys, interns, and paralegals in working on this case, as well as hourly rates for each and a total dollar figure of services performed by each person working on the case. The amount which Hyde requests in his motion is less than the sum of all fees incurred. Hyde explains that "discounts" have been applied to the total sum of all fees. Therefore, Hyde requests the sum of all fees minus the "discounts"—$283,251.75. (Doc. 115 at 7).

Similarly, the "labor, time and trouble involved" are similarly reflective of the nature of Kiesel and Hyde's dispute. *Plath,* 64 P.3d at 991.

The third and fourth *Plath* factors also support the reasonableness of the sum requested by Hyde. Although Hyde's fees amount to several hundred thousand dollars, the transaction at the heart of this dispute was for nearly a million dollars. Further, the price an unfavorable ruling against Hyde might have vastly exceeded the amount requested here. During litigation, Kiesel sought both an award of fees and punitive damages against Hyde. An adverse ruling could therefore have caused Hyde significant financial harm. The cost of Hyde's defense makes sense in light of the "character and importance of the litigation in which the services were rendered" as well as "the amount of money or the value of the property to be affected." *Plath,* 64 P.3d at 991.

The fifth, sixth, and seventh *Plath* factors likewise support the reasonableness of the sum requested by Hyde. Hyde's counsel—whose character and standing has not been questioned—was able to secure an unambiguously favorable result for the client. Despite Kiesel's opposition, the Court resolved all issues on summary judgment in favor of Hyde. These results reflect the apparent skill of the attorneys involved in the case. Litigating this dispute required close attention to a detailed factual history and a range of legal questions, further highlighting the abilities of Hyde's counsel. The requested award of fees also

corresponds to "the professional skill and experience called for." *Plath,* 64 P.3d at 991. As Hyde points out, his counsel utilized experienced attorneys when necessary, and less-experienced attorneys, interns, or paralegals when possible. In total, the seven *Plath* factors all weigh in favor of the reasonableness of Hyde's request for fees.

Like Hyde, Kiesel does not address the *Plath* factors in briefing. Kiesel does, however, raise several specific challenges to Hyde's request for fees. Quoting the Ninth Circuit's decision in *Gonzalez v. City of Maywood*, Kiesel argues that Hyde's request contains hours that are "excessive, redundant, or otherwise unnecessary." (Doc. 126 at 11) (quoting 729 F.3d 1196, 1203 (9th Cir. 2013)). In support, Kiesel highlights several examples of purportedly unreasonable billing.

Kiesel alleges "significant time was billed for duplicative attendance at depositions or other matters, including by paralegals, without any justification for why such duplicative attendance was necessary or otherwise reasonable." (Doc. 126 at 11). In response, Hyde offers cogent explanations for the allegedly duplicative attendance. (Doc. 130 at 9). But in general, Kiesel has offered no caselaw which supports his implicit conclusion that it is inherently unreasonable for paralegals to attend and bill for time at depositions or on other matters. Nor does Kiesel explain why it is inherently unreasonable for two attorneys to appear together at a hearing. In the Court's experience, it is often reasonable for paralegals

23

to attend depositions along with counsel and to bill their client for that time. Similarly, it is often reasonable for two attorneys to appear at a hearing and bill for that time, especially when the hearing involves multiple, complex areas of law and potentially numerous motions in limine.

Kiesel also alleges that "[s]everal hours were billed towards work in a 30(b)(6) deposition of the Stock Farm Homeowner's Association—a deposition that never occurred." (Doc. 126 at 11). Similarly, Kiesel states that "[f]or many entries it remains unclear what work was done at all or how it moved defense of a breach of contract claim forward." (Doc. 126 at 11). In reply, Hyde adequately explains why and how the challenged deposition became unnecessary. (Doc. 130 at 9-10). Moreover, a reasonable award of fees does not require that every avenue pursued by counsel leads to a fruitful end. Accordingly, the Court finds that the lodestar amount requested by Hyde—excluding the aforementioned fees related to potential third party claims—is reasonable.

**b.    Motion to Supplement**

On September 27, 2024, Hyde filed a motion requesting leave to supplement his motion for attorney's fees. (Doc. 125). Hyde specifically seeks to include in his motion nontaxable costs incurred during litigation. (Doc. 125 at 1). The costs amount to $14,696.63 "and include disbursements for recording fees, legal research fees, process server fees, conference room rental fees for a deposition, and

expert witness fees." (Doc. 125 at 2). Kiesel opposes the motion on several grounds. (Doc. 129 at 3). Because it is dispositive of the issue, the Court here considers Kiesel's argument that the motion is untimely.

As Kiesel points out, Fed. R. Civ. P. 54(d)(2)(B)(i) requires that a motion for nontaxable expenses must be filed no later than 14 days after the entry of judgment. Neither party disputes that the motion to supplement was filed more than 14 days after the entry of judgment. Hyde invokes *Ignacio v. County of Hawaii* for the proposition that a "subsequent request to amend or supplement that initial [timely Rule 54 motion] will be deemed timely." (Doc. 131 at 5) (citing *Ignacio v. Cnty. of Hawaii,* No. CV 11-00516 SOM-BMK, 2013 WL 2405211, at *2 (D. Haw. May 31, 2013). However, that case is immediately distinguishable from the facts at hand.

In *Ignacio*, the defendants timely filed a bill of costs. The plaintiff thereafter objected that the bill of costs included nonrecoverable expenses and was not properly itemized. The defendant's amended bill of costs addressed these deficiencies. Despite the plaintiff's claim that the amended bill was not timely, the court concluded that the amended bill of costs was timely filed because it merely supplemented the initial bill of costs. 2013 WL at *1-2. Here, in contrast, Hyde's initial motion did not ask for the nontaxable costs that he now seeks to submit. Allowing Hyde to update his initial motion with expenses that he did not

previously ask for would go far beyond what the court allowed in *Ignacio.*

Hyde also analogizes to *Agster v. Maricopa County* from the District of Arizona. 486 F. Supp. 2d 1005, 1021 (D. Ariz. 2007). In that case, the plaintiffs timely filed a bill of costs as well as motion for fees and non-taxable expenses. Thereafter, the Clerk of court rejected and did not tax $11,462.35 included in the bill of costs. The plaintiffs then filed a second motion for fees and nontaxable expenses, which included the $11,462.35 rejected by the clerk of court. The court therefore held that the second motion, including the request for $11,462.35, was timely and "merely supplements the original, timely motion." 486 F. Supp. 2d at 1021. As with *Ignacio*, the facts in *Agster* are distinguishable from the present matter. Unlike in *Agster*, Hyde's motion to supplement is apparently the first time he has explicitly requested the nontaxable fees. Hyde's request does not follow an objection or judicial determination that the prior request was deficient. Rather, it appears that counsel either (1) changed course on whether to request the nontaxable expenses or (2) forgot to include the expenses when filing the initial motion. In either event, Hyde's request is distinguished from the cases he cites. Accordingly, the Court will follow the plain text of Fed. R. Civ. P. 54(d)(2)(B)(i), under which the request is untimely and will not be granted.

### c.    Costs

The issue of costs is procedural and is therefore governed by Fed. R. Civ. P.

54. *Aceves v. Allstate Ins. Co.,* 68 F.3d 1160, 1168 (9th Cir. 1995). Fed. R. Civ. P.

54(d) states that "[u]nless a federal statute, these rules, or a court order provides

otherwise, costs—other than attorney's fees—should be allowed to the prevailing

party." There is thus "a presumption in favor of awarding costs to a prevailing

party" but the rule "vests in the district court discretion to refuse to award costs."

*Ass'n. of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th

Cir. 2000). The court must specify why it reduced or refused to award costs, and

those reasons must be appropriate. *Ass'n. of Mexican-Am. Educators*, 231 F.3d at

591-92. "[A] district court need not give affirmative reasons for awarding costs;

instead, it need only find that the reasons for denying costs are not sufficiently

persuasive to overcome the presumption in favor of an award." *Save Our Valley v.

Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).

Kiesel urges the Court to exercise its discretion and deny Hyde's request for

fees. To that effect, Kiesel raises two primary arguments. First, Kiesel argues an

award of costs would be unjust for the same reasons that an award of fees would be

unjust. (Doc. 126 at 13). As above, an award of fees is just. Accordingly, this

argument fails. Second, Kiesel argues that awarding costs to Hyde would

detrimentally affect other parties' willingness to bring similar claims. "[A]n award

of costs in this case would unnecessarily chill the filing of future recission

actions." (Doc. 126 at 14). However—as Hyde argues in reply—"the imposition of

costs in this action will have no greater chilling effect than any other civil lawsuit that is filed . . . ." (Doc. 130 at 12). In effect, Kiesel asks to the Court to create an exception to the normal presumption. The Court declines to do so.

Kiesel further argues that the costs requested by Hyde were not properly itemized or necessarily obtained. Specifically, Kiesel challenges Hyde's request for the cost of printed and electronically recorded depositions. (Doc. 126 at 15). In total, Hyde requests $14,417.85 in taxable costs. This entire sum is categorized on Hyde's bill of costs as "Fees for printed or electronically recorded transcripts necessarily obtained for use in this case." (Doc. 117 at 1). In addition to the bill of costs, Hyde has provided an Itemization of Costs, as well as individual invoices for video depositions. Each invoice includes an amount billed for the videotaped deposition as well as "Original and Two Electronic/Paperless Copies." (Doc. 122 at 2-14). Kiesel's objection is based on (1) the necessity of videotaped depositions and (2) the manner in which the fees for video and stenographic copies of the depositions are itemized. Because the issue of necessity is dispositive, the Court need not address the itemization issue.

28 U.S.C. § 1920 limits the kinds of fees and expenses which may be taxed under Fed. R. Civ. P. 54, and allows for "[f]ees for printed or electronically recorded transcripts necessarily obtained for us in the case . . . ." The substance of Kiesel's claim is that Hyde has not demonstrated that it was necessary to obtain

both videotaped and stenographic copies of the depositions.

In support, Kiesel invokes decisions from the Eastern and Northern Districts of California. In *Sullivan v. Costco Wholesale Corporation*, the court held that the defendants did not explain why they needed electronically recorded depositions and so therefore failed "to demonstrate that the video recordings were necessarily obtained." No. 1:17-CV-00959-EPG, 2019 WL 1168531, at *2 (E.D. Cal. Mar. 13, 2019). Here, in contrast, Hyde has offered sufficient explanation for why video depositions were necessary. Namely, five of the nine individuals deposed "live outside the subpoena range of the Court." (Doc. 130 at 13).

This justification of necessity is remarkably similar to the facts in the other case cited by Kiesel: *Shields v. Federation Internationale De Natation*. No. 18-CV-07393-JSC, 2023 WL 8360169, at *2 (N.D. Cal. Nov. 17, 2023). In that case, the court found that videotaped depositions were necessary where 19 of 29 deponents resided outside the courts subpoena range. 2023 WL at *2. Accordingly, the Court finds that both the costs of video and stenographic deposition transcripts were necessarily obtained. Because both were necessary it does not matter how the costs are itemized, so long as they are accounted for.

## III.    Conclusion

For the reasons discussed above,

IT IS ORDERED that Hyde's motion for award of attorney's fees (Doc.

114) is GRANTED in the amount of $281,456.75.

IT IS FURTHER ORDERED that Hyde's motion for leave to supplement

his motion for award of attorney's fees is DENIED. (Doc. 125).

IT IS FURTHER ORDERED that Kiesel's objection to Hyde's bill of costs

(Doc. 126) is overruled.

DATED this 30th day of June, 2025.

Kathleen L. DeSoto
United States Magistrate Judge